IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL MULLEN, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:17-cv-1059 |
| | ) JUDGE TRAUGER |
| CITY OF LAVERGNE, TN, | ) |
| Defendant | ) |

**MEMORANDUM**

Pending before the court is Defendant's Motion for Partial Summary Judgment (Docket No. 16). Plaintiff has filed a Response (Docket Nos. 23 and 24), and Defendant has filed a Reply (Docket No. 25). For the reasons stated herein, Defendant's Motion will be granted.

FACTUAL BACKGROUND

Plaintiff Mullen was hired by the City of Lavergne as a police officer in July of 2001. Plaintiff asserts that, beginning in 2006, Defendant retaliated against him for reporting criminal activities by other officers and city officials. For example, he contends that, in 2006, he was transferred from his position in the Narcotics Division to the Criminal Investigations Division for reporting signs of marijuana use at the home of the Mayor. He also alleges that, in 2012, when he expressed his concerns about successive administrations overlooking illegal behavior of fellow officers and governmental officials, he was transferred to the Patrol Division, denying him the opportunity for a promotion and effectively punishing him for expressing his concerns. Plaintiff also asserts that he was the subject of numerous internal affairs investigations because of voicing his concerns.

In November of 2014, Defendant placed Plaintiff on paid administrative leave following an internal affairs investigation. Plaintiff asserts that, to date, he has not been given a definitive reason for being placed on leave. He contends that he had no meaningful contact with any of his superiors from November of 2014 until April of 2015. On April 20, 2015, Plaintiff had a meeting with the City's Mayor, Dennis Waldron, concerning Plaintiff's employment. Plaintiff asserts that he gave his letter of resignation to Waldron at that meeting, but Waldron did not want to accept it and told Plaintiff that he would try to work out the situation.

Waldron has explained that it was clear to him on April 20, 2015, that Plaintiff did not intend to continue to work for the City so long as Walker was the Chief of Police and, because Waldron had no intention of firing Walker, he determined that acceptance of Plaintiff's resignation was appropriate.[1] Waldron gave Plaintiff's letter of resignation to the City's Director of Human Resources for processing on April 20, 2015, the same day as his meeting with Plaintiff.[2] It is undisputed that Plaintiff attempted to rescind his resignation on April 28, 2015, but the City denied his request to rescind it via letter dated April 30, 2015.

The audio recording of the meeting between Plaintiff and Mayor Waldron reveals a lot of discussion about the problems Plaintiff perceived in the police department. Plaintiff told Waldron that he did not want to work for "that guy" (the City's Chief of Police, Mike Walker[3]) and that, if Walker was there, Plaintiff did not want to be there. Plaintiff indicated that he would like to stay but that he was not going to work for Walker. Plaintiff stated "I don't want to come back if that man

---

[1] Docket No. 20 (Affidavit of Dennis Waldron) at ¶ 6.

[2] Docket No. 19 (Affidavit of Cheryl Lewis-Smith) at ¶ 4.

[3] Docket No. 20 (Affidavit of Dennis Waldron) at ¶ 4.

is in charge." Waldron indicated that a lot of people were pressuring him to fire Plaintiff, but he (Waldron) was the only one who could fire him. Plaintiff said that, if nothing could be done about Walker, then he would like his last day to be May 1st, and he offered Waldron his resignation letter. After first telling Plaintiff to hold on to the letter, Waldron took it and said he wanted to "talk with HR." Plaintiff reiterated that, "if nothing changes," he wanted to have May 1st be his last day and that the City needed to let him leave in good standing. Docket No. 22 (manually filed audio recording).

This action was filed on April 28, 2016, in the Rutherford County Chancery Court. On May 25, 2016, Defendant removed the action to this court (Case No. 3:16-cv-0950). The parties consented to jurisdiction before the Magistrate Judge, who, on March 9, 2017, remanded the matter to the Rutherford County Chancery Court, holding that this court lacked subject matter jurisdiction. (Case No. 3:16-cv-0950, Docket No. 34).[4] After remand, Plaintiff filed an Amended Complaint, alleging claims under 42 U.S.C. § 1983 for violation of his due process rights and his First Amendment rights. On July 19, 2017, Defendant again removed the action to this court, where it was assigned a new case number. Docket No. 1.

Plaintiff alleges that he (1) was retaliated against in violation of the Tennessee Public Protection Act ("TPPA"); (2) experienced a hostile work environment based on sexual harassment, in violation of the Tennessee Human Rights Act ("THRA"); (3) was a victim of reverse racial discrimination in violation of the THRA; (4) was denied his Fifth Amendment due process rights;

---

[4] In remanding the action, the Magistrate Judge found that Defendant failed to assert standing under 28 U.S.C. § 1443(1) and failed to establish grounds for original jurisdiction under 28 U.S.C. § 1331. (Case No. 3:16-cv-0950, Docket No. 33). The court also found that Plaintiff had failed to suggest any federal or state law upon which his Fourteenth Amendment claim was based. *Id*.

(5) was deprived of his constitutionally-protected liberty interest in employment, in violation of the Fourteenth Amendment; and (6) was denied his First Amendment free speech rights. Docket No. 1-1 (Amended Complaint). Defendant's Motion for Partial Summary Judgment asks the court to dismiss Plaintiff's TPPA, THRA and First Amendment claims as time-barred by the applicable one-year statutes of limitation.

SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary

judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

STATUTES OF LIMITATION

Claims under the TPPA are subject to a one-year limitation period. *Clark v. Metropolitan Gov't of Nashville & Davidson County*, 2017 WL 1224703 at * 2 (Tenn. Ct. App. April 3, 2017) (citing *Gibson-Holmes v. Fifth Third Bank*, 661 F.Supp.2d 905, 912 (M.D. Tenn. 2009). Similarly, claims under the THRA must also be brought within one year after the discriminatory practice ceases. Tenn. Code Ann. § 4-21-311(d). Finally, claims under 42 U.S.C. § 1983 must be brought within one year after the cause of action accrues. Tenn. Code Ann. § 28-1-104(a)(1).The issue in this case is when Plaintiff's causes of action accrued.

TPPA - Constructive Discharge

The TPPA provides that no employee "shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). Plaintiff's Amended Complaint asserts that Defendant retaliated against Plaintiff for expressing his concerns, in violation of the TPPA, in the following ways: (1) in 2006, by transferring him from the Narcotics Division to the Criminal Investigations Division; (2) in 2010-11, by failing to promote him for a job for which he claims to have been qualified; (3) in 2011-early 2012, by making him the subject of frequent internal affairs investigations in an attempt to silence him; (4) in 2012, by failing to promote him and, instead, transferring him to the Patrol Division; (5) in November of 2014, by placing him on administrative leave; and (6) by constructively discharging him. The only one of these alleged TPPA violations that is allegedly a "discharge or termination"

5

is the last, the alleged constructive discharge. The other alleged violations do not fall within the prohibition of the statute. *See Harman v. Univ. of Tenn.*, 353 S.W.3d 734, 738 (Tenn. 2011).

Neither party has cited any specific authority about the accrual of a constructive discharge claim under the TPPA.[5] The court sees no reason to distinguish this claim from constructive discharge claims in discrimination cases, however. The Supreme Court held, in 2016, that a constructive discharge claim accrues, and the limitations period begins to run, when the employee gives notice of his resignation, not on the effective date of that resignation. *Green v. Brennan*, 136 S.Ct. 1769, 1782 (2016). In *Green*, the plaintiff alleged constructive discharge in violation of Title VII. *Id.* at 1775. Relying on the standard rule for limitations periods, which provides that a limitations period commences "when the plaintiff has a complete and present cause of action," the Court found that the complete and present cause of action arose when the plaintiff resigned. *Id.* at 1776.[6]

Finding that the resignation triggers the limitation period, the Court then addressed the question of when precisely an employee resigns. The Court noted that in the reverse kind of discharge claim (wrongful discharge by the employer), the limitations period begins to run on the

---

[5] In *United States ex rel. Worthy v. Eastern Maine Healthways Systems,* 2017 WL 211609, (D. Me. Jan. 18, 2017), the court found that a plaintiff's constructive discharge claim under Maine's Whistleblowers' Protection Act accrued when she gave notice of her resignation, not the effective date of that resignation.

[6] Citing *Delaware State College v. Ricks*, 101 S.Ct. 498 (1980), the *Green* Court noted the "standard rule" that a limitations period begins to run after a claim accrues, not after an inevitable consequence of that claim. *Green*, 136 S.Ct. at 1780. In *Ricks*, the plaintiff was denied tenure at the college and given a one-year "terminal" contract for his last year of teaching. *Ricks*, 101 S.Ct. 498 at 501. The Court found that the limitations period commenced at the time the tenure decision was made and communicated to the plaintiff, not at the end of the one-year contract. *Id.* at 504.

date the employer notifies the employee that he is fired, not on the last day of his employment. *Id.* at 1782. "Likewise here," the Court stated, "we hold that a constructive discharge claim accrues - and the limitations period begins to run - when the employee gives notice of his resignation, not on the effective date of that resignation." *Id.*

In an unpublished opinion, the Sixth Circuit Court of Appeals has stated: "the employee effectively determines when he or she is constructively discharged by resigning. Therefore, we conclude that in a constructive discharge the limitation period begins when the employee resigns, not the final day of employment." *Mayo v. Kenwood Country Club, Inc.*, 1998 WL 863624 at * 2 (6th Cir. 1998). Similarly, the court in *Diepenhorst v. City of Battle Creek*, 2007 WL 1141492 at * 3 (W.D. Mich. April 17, 2007), held that, in instances of both actual and constructive discriminatory discharge, the statute of limitations begins to run on the date that definite notice of separation is given by either the employer or the employee. *See also Hill v. Bd. of Educ. of City School Distr. of City of Cincinnati*, 2015 WL 3868004 at * 7 (S.D. Ohio June 23, 2015) (plaintiff alleging constructive discharge must bring claim within applicable limitations period measured from the date she resigns); *Maioriello v. New York State Office for People with Developmental Disabilities*, __ F.Supp.3d __, 2017 WL 4326055 at * 24 (N.D. N.Y. Sept. 27, 2017) ("It is well-established that a constructive discharge accrues when an employee gives notice of his or her resignation.");*Scott v. Lee County Youth Dev. Center*, 232 F.Supp2d 1289, 1294 (M.D. Ala. 2002) (same, collecting cases).

Plaintiff contends that the Mayor did not accept his resignation on April 20, 2015, and indicated he would try to "work out the situation," so his actual termination of employment occurred when the City refused to withdraw his resignation. Defendant, on the other hand, argues that Plaintiff's resignation, on April 20, 2015, triggered the statute of limitations for his constructive

7

discharge claim. For the reasons stated in the cases cited above, the court finds that Plaintiff's resignation occurred when he gave his letter of resignation to Mayor Waldron. At that time, Plaintiff voluntarily submitted his letter of resignation and indicated his intent to resign if Chief Walker remained. The fact that Plaintiff says he left the meeting "believing he still had a job" does not affect this analysis. Moreover, the fact that Plaintiff later attempted to rescind his resignation indicates that he believed he had resigned (otherwise, there would have been no need to rescind the resignation). As indicated above, Mayor Waldron has explained that it was clear to him on April 20, 2015, that Plaintiff did not intend to continue to work for the City so long as Walker was the Chief of Police and, because Waldron had no intention of firing Walker, he determined that acceptance of Plaintiff's resignation on April 20, 2015, was appropriate.

The court is bound by the cases above, particularly *Green*, and finds that Plaintiff's constructive discharge claim accrued on the date he resigned, April 20, 2015, not on the effective date of that resignation, May 1, 2015. Because Plaintiff's resignation occurred on April 20, 2015, his TPPA claim expired on April 20, 2016. This action was not filed until April 28, 2016, and Plaintiff's TPPA claim is time-barred. Defendant's Motion for Partial Summary Judgment on the TPPA claim will be granted, and that claim will be dismissed.

THRA

Plaintiff contends that he experienced a hostile work environment based on sexual harassment throughout his employment with the City. Plaintiff was put on administrative leave in November 2014, so he was not at work from November 2014 until he resigned and could not have been in a "hostile work environment" during that time period. Any alleged sexual harassment or hostile work environment claim, therefore, accrued before November 2014 and is barred by the one-

year statute of limitations. The court notes, moreover, that Plaintiff claims he was harassed for "not being like-minded," for not being "in the clique." Neither of these groups is protected under the THRA, and neither of these groups is based upon gender or sex. Accordingly, Plaintiff's THRA sexual harassment/hostile work environment claim will be dismissed.

Plaintiff also alleges that he was subject to reverse racial discrimination when Defendant placed him on paid administrative leave. That action by Defendant occurred in November of 2014, also outside the applicable statute of limitations. Therefore, the reverse racial discrimination claim also will be dismissed.

First Amendment

Plaintiff alleges that Defendant violated his First Amendment rights to free speech by conducting internal affairs investigations of him. Docket No. 1-1 at ¶¶ 56-57. Any internal affairs investigations of Plaintiff occurred at the latest in November of 2014, when he was placed on administrative leave and, thus, those claims are barred by the statute of limitations for constitutional claims. Tenn. Code Ann. § 28-1-104. Plaintiff's First Amendment claims will be dismissed.

CONCLUSION

For these reasons, Defendant's Motion for Partial Summary Judgment (Docket No. 16) will be granted. Plaintiff's claims for due process violations under the Fifth and Fourteenth Amendments will be tried on May 21, 2019, as previously ordered by the court. Docket No. 15.

IT IS SO ORDERED.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE